IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. STEPHEN WILEY,<br><br>    Plaintiff,<br><br>  v.<br><br>CENDANT CORPORATION SHORT<br>TERM DISABILITY PLAN, ET AL.,<br><br>    Defendant.<br>_____/ | No. C 09-00423 CRB<br><br>**ORDER GRANTING PARTIAL<br>SUMMARY JUDGMENT** |

    Plaintiff J. Stephen Wiley brings suit under ERISA, 29 U.S.C. §§ 1001 et seq., based on a denial of benefits under a long-term disability plan ("plan") sponsored by Plaintiff's former employer, Cendant, and insured by Aetna Life Insurance Co. Now pending before the Court is Plaintiff's Motion for Partial Summary Judgment as to the proper standard of review of the denial of benefits. After careful review and consideration of the papers submitted, the motion is GRANTED. The Court finds that oral argument is unnecessary and therefore VACATES the July 10, 2009 hearing.

**I.    BACKGROUND**

    Plaintiff ended his employment at Cendant, submitted a claim for plan benefits, and was denied. Mot. at 2-3. Initially, Plaintiff believed that the governing plan instrument was an Aetna certificate of coverage ("certificate"). Id. The certificate contains no grant of discretionary authority. In the course of litigation, however, Defendant produced two

1  additional documents, the Summary Plan Description ("SPD") and the contract between
2  Cendant and Aetna ("contract").  Mot. at 1.[1]

3        The SPD identifies Cendant's Employee Benefits Committee as the Plan
4  Administrator and Named Fiduciary, and identifies Aetna as the Claims Administrator.  SPD
5  at 1115, 1118.  The SPD gives Aetna "full discretionary authority to use its own materials,
6  procedures and expertise to define" specific terms used in the disability plans (such as
7  "benefit salary," and "mental illness").  Id. at 1107.  The definition of such terms is not at
8  issue in this case.  Mot. at 4.

9        The SPD explains that the Claims Administrator (Aetna) "initially reviews all claims
10 to determine eligibility for benefits, answers any questions concerning coverage, eligibility,
11 administration, and reviews its initial determinations, upon written requests."  SPD at 1112.
12 It specifies: "The Company Human Resources Representatives and the Claims
13 Administrators serve under the authority of the Company's Employee Benefits Committee.
14 The Committee has final and complete discretionary authority to determine all questions
15 concerning eligibility . . . ."  Id.  It goes on to say that questions regarding interpretation of
16 the plan or discretionary decisions would be forwarded to the Employee Benefits Committee.
17 Id.  And it further states that the committee, "using the Plan documents," "will make the final
18 determination," and "has the power to overrule earlier decisions."  Id.

19       The SPD also contains the following disclaimer: "This booklet constitutes the
20 Summary Plan Description (SPD) of the Company's health and welfare benefit plans.
21 Because this is only a summary of the official Plan documents, the Plan documents will
22 always control should the Summary Plan Description contain any omission or conflict with
23 the Plan Documents."  Id. at 1110.

24       The contract, in contrast to the SPD, states:

---

[1] While Plaintiff asserts that he did not see these documents prior to litigation, there is no evidence one way or the other in the record.  Accordingly, the Court does not base this Order on Plaintiff's claim that he received inadequate notice of the contents of these documents.

2

> Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy. Contract at 1068.

The Court's determination herein turns on its interpretation of the language in the SPD and contract.

## II.    DISCUSSION

### 1.    Legal Standards

The default standard for evaluating a claim for benefits under ERISA is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Courts will use an abuse of discretion standard only if the benefit plan gives the administrator or fiduciary "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. The grant of discretionary authority must be unambiguous. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999) (upholding de novo review where "to the extent discretion is deferred, the conferral and its scope are at best ambiguous").

If there is ambiguous language in a plan, ambiguities are construed in favor of the insured. Kearney, 175 F.3d at 1090. Similarly, if there are two conflicting documents, even if one is erroneous, courts generally bind ERISA defendants to the more employee-favorable document, because

> Any burden of uncertainty created by careless or inaccurate drafting . . . must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask.

Banuelos v. Constr. Laborers' Trust Funds for S. Cal., 382 F.3d 897, 904 (9th Cir. 2004) (citing Hansen v. Cont'l Ins. Co., 940 F.2d 971, 981-82 (5th Cir. 1991)). Thus, in Bergt v. Ret. Plan for Pilots Employed by Markair, Inc., 293 F.3d 1139, 1144-45 (9th Cir. 2002), where the plan unambiguously said one thing and the SPD unambiguously said another, the court applied the more favorable document (in that case, the plan), adding that "the law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task."

3

### 2. Whether There is a Conflict

Plaintiff argues that Defendant's documents do not unambiguously confer discretion to Aetna, because each says something different: the certificate says nothing, the SPD grants broad discretion to the Employee Benefits Committee and only limited discretion to Aetna, and the contract grants broad discretion to Aetna. Mot. At 7. Plaintiff thereby seeks to enforce the SPD, the document that is more favorable to him. Id. At 8-9.

Plaintiff further contends that allowing a contract to override contradictory provisions of an SPD would render meaningless the statutory requirement under 29 U.S.C. § 1022(a) that SPDs be both "accurate" and "sufficiently comprehensive to reasonably apprise" plan participants of their rights. Id. at 9. Plaintiff finds support for this argument in Hansen, 940 F.2d at 981-82, which reasoned that "if a participant has to read and understand the policy in order to make use of the summary then the summary is of no use at all."

Defendant argues, unpersuasively, that there is no conflict between the SPD and the contract: "Nowhere does the SPD state that Aetna is denied discretionary authority or that discretionary authority is exclusive to the Committee." Opp. at 4. In fact, the SPD grants the Committee "final and complete discretionary authority," specifies that only the Committee makes "the final determination," and grants very limited discretion to Aetna. Id. at 1107. That conflicts mightily with the "complete authority" the contract gives Aetna to determine whether employees are entitled to benefits. Contract at 1068.[2]

Defendant's reliance on Washington v. Standard Ins. Co., 2004 U.S. Dist. LEXIS 22975, *33-34 (U.S.D.C., N.D. Cal. 2004) is unavailing. In Washington, 2004 U.S. Dist. LEXIS 22975, *33-34, the Court ruled in an unpublished case that where the SPD was silent as to the administrator's discretion and the plan granted discretion, there was no conflict and abuse of discretion was the proper standard. But there the SPD "simply [did] not address the

---

[2] Defendant also argues that even if it is not clear who is granted discretion, it is at least clear from the SPD and the contract that someone is granted discretion, and this should be sufficient. Opp.at 5. This position is untenable, as the two documents cannot be read to unambiguously confer discretion in any one entity, and the abuse of discretion standard is only used when the decision-maker is the one granted discretion. See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1105 (9th Cir. 2003) (discussing wrong decision-maker cases).

4

issue," id. at *33, and here it does.  Defendant also relies on Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1321 (9th Cir. 1995), which held that discretionary language need not be included in the SPD so long as it is included in the plan.  Defendant fails to acknowledge that even if Cendant was not required to include discretionary language in the SPD, it did, and such language conflicts materially with the language in the contract.

### 3.  Disclaimer

The closer question is whether the disclaimer in the SPD cures the conflict.  See SPD at 1110 ("Because this is only a summary of the official Plan documents, the Plan documents will always control should the Summary Plan Description contain any . . . conflict with the Plan Documents.").  Defendant asserts without further discussion that it does.  Opp. At 5-6.  The Court disagrees.

In Hansen, 940 F.2d at 982, the Fifth Circuit rejected an insurer's attempt to rely on a disclaimer in a SPD, holding:

> if the insurer could escape the binding effect of the summary simply by adding a disclaimer to the summary, the insurer could escape the requirement of an accurate and comprehensive summary plan description. Accordingly, this Court holds, as a necessary corollary to its holding that the statements in the summary plan description are binding, that drafters of a summary plan description may not disclaim its binding nature.

The court explained that of course a SPD, by definition, required "abbreviation or omission of some of the details of the plan or policy," and so it would be appropriate to look to the plan to fill in details or incidental information.  Id at n.8.  "It is inappropriate, however, to refer to the plan or policy to resolve an ambiguity against a plan participant, or to vary or limit the terms described in the summary. . . . such a purpose would undermine the requirement of an accurate summary, and upset Congress' scheme."  Id.  See also Glocker v. W.R. Grace & Co., 974 F.2d 540, 543 (4th Cir. 1992) ("where the Plan favors the employer, the employer cannot invoke the Plan by relying on a disclaimer in the handbook that, contrary to the intent of Congress, designates the Plan as the controlling document"); McKnight v. Southern Life & Health Ins. Co, 758 F.2d 1566, 1570 (11th Cir. 1985) ("It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a

voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan").

Bergt, 293 F.3d at 1145, "adopt[s] the reasoning of the Fifth Circuit" in Hansen that "[a]ny burden of uncertainty created by . . . inaccurate drafting of the summary must be placed on those who do the drafting." Moreover, the Ninth Circuit concluded in Bergt that "the law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents." Id. In keeping with Bergt, this Court finds that Cendant, not its former employee, should bear the burden of its own inaccurate (in this case, contradictory) drafting. Honoring Cendant's disclaimer would not encourage employers to write SPDs that are consistent with ERISA plan master documents– it would do the opposite. Employers could put anything in a SPD, no matter how false, secure in the knowledge that a disclaimer would provide them cover. The Court will not allow employers to circumvent ERISA's requirement that SPDs be accurate and sufficiently comprehensive to reasonably apprise plan participants of their rights. The conflict in Cendant's documents is not cured by the disclaimer; therefore there was no unambiguous grant of discretionary authority.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED. The July 10, 2009 hearing is VACATED.

**IT IS SO ORDERED.**

Dated: July 7, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE